## THE CAROLINE.

### (District Court, D. Rhode Island. October 20, 1911.)

### No. 1,207.

1. SALVAGE (§ 18*)—PERSON ENTITLED TO COMPENSATION—CHARTERER—NEGLIGENT SINKING OF VESSEL.

A charterer of a tug, who drove her through the ice, causing injuries from which she sunk, was under legal obligation to make the loss good, and cannot maintain a claim against the owner for salvage services rendered in doing so.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 35; Dec. Dig. § 18.*]

2. SHIPPING (§ 58*)—CONTRACT FOR REPAIR OF TUG—EVIDENCE.

Evidence considered, and *held* to establish the claim of the owners of a tug, sunk through the negligence of the charterer, that a contract was subsequently made between the parties by which, in consideration of the settlement of all claims by the owners for damages, the charterer agreed to raise and repair the tug at actual cost.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

In Admiralty. Suit by the Holbrook, Cabot & Rollins Corporation against the steam tug Caroline. Decree for libelant.

Livingston Ham and Alexander Whiteside, for libelant.
Chas. A. Wilson and Christopher E. Champlin, for claimant.

BROWN, District Judge. The tug Caroline, while under charter to the libelant, was so injured by ice in the Seekonk river that she sunk at the dock with her bow on shore, February 22, 1907.

[1] The libel contains two counts for salvage services and a third count alleging an oral contract between the libelant and the owners of the tug to raise and repair her for the sum of $800. The claimant by its answer denies the right to make claim for salvage on the ground that the service rendered was merely in performance of a legal obligation. Upon the evidence I am of the opinion that this objection to the salvage claims is well founded. The charterer was responsible for the injuries caused by driving the tug, without sheathing, through ice, and was under legal obligation to make good the loss. The Pine Forest (D. C.) 119 Fed. 999.

The answer sets up an oral agreement between the owners of the tug and John L. Lee, superintendent and agent of the libelants:

"That in consideration that the owners of said tug would waive all claim for her being negligently sunk, would pay for her sheathing, retubing her boilers, and renewing such parts of her machinery as was necessary, and to make no charge for the time the tug was delayed, in consequence of being sunk, said Holbrook, Cabot & Rollins agreed to pump out, raise, and repair said tug for what it would actually cost them to do such work."

The agreement upon which the libelant relies is said to have been made on February 24th, at which time a settlement was made between the underwriters and the owners of the tug.

[2] While the evidence is in direct conflict, it is proved by convincing testimony that the settlement for the sum of $1,300 was made with the underwriters upon the belief of the underwriters' agent that the owners had agreed to pay the sum of $800 for raising the tug. The preponderance of evidence is to the effect that an offer was made by the superintendent of Holbrook, Cabot & Rollins Corporation to raise the tug for the sum of $800, which was accepted by the representative of the owners. Receipts were signed on the following day, releasing the underwriters from all claims of the owners against them. The libelant's evidence, however, is to the effect that the sum of $800 was to be paid merely for the raising of the tug, and did not include repairs, and there is no evidence tending to show that Holbrook, Cabot & Rollins Corporation were released from any liability to the owners for negligence.

The only witnesses to the subsequent contract were Lee, the superintendent, and Champlin, the representative of the owners. This contract was a different contract made at a later time and upon a different subject-matter from the agreement made on February 24th. It is said that it involved, not merely the expense of raising the tug, but the expense of repairs and a settlement of all claims for damage by reason of negligence.

Upon the libelant's presentation of the case by its evidence nothing was settled but the price of raising the tug, and the charterer was not released from any liability for negligence in causing this expense.

Though there is no cross-libel for negligence, owing to the defendant's claim of a full settlement of all matters, including negligence, yet upon the question of the right to claim salvage evidence was adduced that the tug was driven through thick ice without sheathing, and under no such urgency as would justify the imperiling of the vessel. As the case stands, therefore, if the sum of $800 was agreed upon as a proper charge for raising the vessel, consistency would require that it be treated as a proper amount of damage caused to the owners through the libelant's negligence, and the libelant would be further liable in the amount already received by it for repairs. In fact, upon the whole evidence, the sums already received by the Holbrook, Cabot & Rollins Corporation seem to be in excess of what it would be entitled to on the merits of the case.

The salvage claim has made it necessary to consider the question of the charterer's negligence, and, as I find such negligence as to pre-

clude a salvage claim, this fact must be taken into consideration in considering whether the contract set up in the answer is supported by the probabilities of the case. The fact that an agreement was made on February 24th on the single question of the amount payable for raising the tug is not necessarily inconsistent with the making of the later and broader contract. The contract said to have been made between Lee and Champlin at a subsequent time seems to me to have been, under the circumstances, a liberal one for the charterer. It was released from all liability, and was permitted to recover the expense actually incurred by it in raising and repairing the vessel. There is no direct contradiction of the testimony of Lee and Champlin as to the agreement made subsequently, though there is, it is true, suggestion of collusion between Champlin and Lee, and there is testimony that the bill actually paid to Holbrook, Cabot & Rollins Corporation did not contain all proper charges. Upon the testimony of the accountant I am of the opinion that there was an unpaid balance of $73.45 due upon the contract testified to by Lee and Champlin.

Whether the agreement made on the 24th was merely for the purpose of securing a settlement with the underwriter, or was intended by the parties as a binding agreement, admits of some doubt. If so intended, however, it was superseded by a general settlement. While it is urged that this was entirely collusive, it seems to have secured to Holbrook, Cabot & Rollins Corporation all that they were reasonably entitled to; and, if there was collusion, I am of the opinion that it was not to the detriment of the libelant, except in respect to the omission from the account rendered of items to the amount of $73.45.

The question of the relation between the Atlantic Construction Company and the Holbrook, Cabot & Rollins Corporation does not, under the circumstances, require special consideration, since Champlin testifies that he had no knowledge of the Construction Company until the filing of the libel, and dealt with the libelant, who must be regarded as the principal.

The libelant is entitled to judgment for $73.45. Costs to neither party.